Patricia GAINES, administratrix of the Estate of Christopher J. Duffy & Personal Representative of Heirs at law, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Consolidated Rail Corporation and Anchor Motor Freight, Inc., Defendants.

Civ. A. No. 91–11633–MA.

United States District Court, D. Massachusetts.

Nov. 21, 1991.

David Rodibaugh, Finkelstein & Oriel, Framingham, Mass., for plaintiff Patricia Gaines.

James J. Ciapciak, Campbell & Associates, Boston, Mass., for defendant General Motors Corp.

Robert L. Farrell and Leonard F. Zandrow, Parker, Coulter, Daley & White, Boston, Mass., for defendant Consol. Rail Corp.

David M. O'Connor, O'Connor & Jantzen, Boston, Mass., for defendant Anchor Motor Freight, Inc.

## FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS

ALEXANDER, United States Magistrate Judge.

This diversity case has been referred to this Court for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) on a motion to dismiss. Defendant Consolidated Rail Corporation has moved this Court to dismiss the case for failure to state a claim. Fed.R.Civ.P. 12(b)(6).

### FACTUAL BACKGROUND

The administratrix of the decedent's estate brings this suit under the doctrine of attractive nuisance. The following are the allegations of the complaint in summary form. On March 12, 1988, the decedent, a 16 and ½ year old youth, "stole" a motor vehicle from a lot in Framingham, Massachusetts. The defendant Consolidated Rail Corporation (Conrail) either owned or had control of the vehicle. The decedent crashed the vehicle and was subsequently charged with motor vehicle infractions.

On April 24, 1988, decedent again "stole" a vehicle from the same lot. The keys were in the ignition. Police officers pursued the decedent, who lost control of the vehicle and crashed into a tree. He died as a result of the accident.

This action alleges negligence under the attractive nuisance doctrine, seeking to recover expected income, services, protection, care, assistance, society, companionship, comfort and advice to his mother, funeral and burial expenses, pain and suffering of the decedent and psychological shock and depression of the plaintiff personally.

### ANALYSIS

This Court shall dismiss any action for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[T]he Court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiffs.... Furthermore, the complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief." *Kuney International, S.A. v. DiIanni*, 746 F.Supp. 234, 236 (D.Mass.1990) (citations omitted).

Conrail's first argument for dismissal is that it did not owe any duty to the decedent. In order to recover in an action for negligence, the plaintiff must establish a duty of care owed by the defendant. *Dolan v. Boston & M.R.R.*, 328 Mass. 532, 535, 105 N.E.2d 376, 378 (1952). Massachusetts law circumscribes the duty of care within the bounds of foreseeability of the risk. "As a general rule, '[t]here is no duty owed when the risk which results in the plaintiff's injury is not one which could be reasonably anticipated by the defendant.'" *Husband v. Dubose*, 26 Mass.App. Ct. 667, 669, 531 N.E.2d 600, 602 (1988) (quoting *Glick v. Prince Italian Foods of Saugus, Inc.*, 25 Mass.App.Ct. 901, 902, 514 N.E.2d 100, 102 (1987)). Apposite to the case *sub judice*, Massachusetts has been particularly reluctant to find a duty to take precautions against possible criminal activity.[1] For instance, in *Dhimos v. Cor-*

---

1. The plaintiff urges this Court to consider the decedent's conduct as not criminal. As noted this Court will "accept the factual allegations set forth in the complaint as true." *Kuney*, 746 F.Supp. at 236. This Court will "view" those facts "in the light most favorable to the plaintiff," *Lessler v. Little*, 857 F.2d 866, 867 (1st Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989) (citations omitted), and will "draw all reasonable inferences in fa-

*mier,* 400 Mass. 504, 509 N.E.2d 1199 (1987), the Supreme Judicial Court held the operator of a store not liable for a fatal injury to the plaintiff in a traffic accident with a person who illegally obtained narcotics and alcohol from a third party in the parking lot of the store. The court indicated that, unless the criminal act is foreseeable in the sense of imposing a direct obligation on the defendant, as in a "dram shop" case (where there is a duty to refrain from serving alcohol to intoxicated patrons of a tavern), there is no duty to prevent it. *Id.* at 507–08, 509 N.E.2d at 1200–01 (citing *Cimino v. Milford Keg, Inc.,* 385 Mass. 323, 326–28, 431 N.E.2d 920, 923–24 (1982); *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 500–01, 233 N.E.2d 18, 19–20 (1968)). Thus, if an injury derives from criminal conduct, it is less likely that the risk will be foreseeable, removing the linchpin for the imposition of a duty.

The plaintiff, however, contends that the Massachusetts child trespass statute imposes a duty of care. That statute, embodying the attractive nuisance doctrine provides:

> Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (a) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (b) the condition is one of which the land owner knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, (d) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the land owner fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Mass.Gen.L. ch. 231, § 85Q.

While the statute may impose a duty to foresee certain instances of criminal trespass, it should not negate the rationale of those cases finding other types of criminal activity to be so beyond the pale of foreseeability as to compel a finding of no duty. In the words of the statute, there was no "condition" of which Conrail "should [have] realize[d]" would "involve an unreasonable risk," since this sort of criminality was not foreseeable. *Id.* Because this activity is so peculiar, the fact that there was a prior theft by the same person should not affect the foreseeability calculus.

Conrail argues that the statute should not even apply because of the decedent's age and because of the type of conduct. As the Supreme Judicial Court has acknowledged, "the duty of reasonable care owed by a landowner to a child trespasser is applicable *only where a plaintiff would fail to appreciate his peril because of his youth.*" *McDonald v. Consolidated Rail Corp.,* 399 Mass. 25, 29, 502 N.E.2d 521, 524 (1987).[2] As comment i to the *Restatement (Second) of Torts* § 339 [3] notes:

vor of the plaintiff[ ]." *Kuney,* 746 F.Supp. at 236. While there has not been a criminal conviction and, as the plaintiff alleges, the decedent's juvenile status would exempt him from criminal proceedings, Mass Gen.L. ch. 119, § 53, the plaintiff cannot escape from her allegation of what is essentially criminal activity, as she alleges that Conrail had a duty to foresee this type of activity.

The Massachusetts statute contemplates binding the plaintiff to the factual allegations alleged in the complaint. *See* Mass.Gen.L. ch. 231, § 87 ("In any civil action pleadings shall not be evidence on the trial, but the allegations therein shall bind the party making them."); *see also De Nunzio v. City Manager of Cambridge,* 341 Mass.

420, 421, 169 N.E.2d 877, 878–79 (1960). The doctrine of judicial estoppel also counsels holding the plaintiff to her allegation of theft. *See Brown v. Quinn,* 406 Mass. 641, 646, 550 N.E.2d 134, 137 (1990); *Latino Political Action Committee, Inc. v. Boston,* 581 F.Supp. 478, 480 (D.Mass. 1984).

**2.** As the court noted, the "common law rule ... is indistinguishable in its elements from the statute...." *Id.*

**3.** The Supreme Judicial Court has held § 339 to be "indistinguishable" from the statutory and common law duty. *See McDonald,* 399 Mass. at 29, 502 N.E.2d at 524.

"[The duty] does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them.... [It does not impose liability upon possessors of land] maintaining on the land the normal, necessary and usual implements which are essential to its normal use, but which reckless children can use to their harm in a spirit of bravado or to gratify some other childish desire and with as full a perception of the risks which they are running as though they were adults."

*Id.*

■ In the present case, a 16 and ½ year old child criminally undertook to engage in an adult activity—driving an automobile.[4] While age alone might not be dispositive of any issue of fact,[5] it is a factor in determining whether, as a matter of law, the defendant's youth was not the predicate to his failure to appreciate the risk. The plaintiff seeks to prove that the decedent was incapable of appreciating the risk, due to psychological instability.[6] The statute, however, imposes a duty upon landowners to foresee and circumvent the risk of childish activity, not pathological activity. The statute should not be read to make a possessor of land the insurer of a pathological teenager who happens to find the accident he is so desperately seeking during a trespass on that land. As the Supreme Judicial Court has noted, it is the trespasser's *"youthful* capacity for appreciating risks" that is relevant, *McDonald,* 399 Mass. at 29 n. 4, 502 N.E.2d at 524 n. 4 (emphasis added), not other factors bearing on the ability to appreciate risks.

■ Even were the statute to apply, Conrail contends that there is no causation as a matter of law. Here too, foreseeability is the touchstone. As the Massachusetts Appeals Court has stated:

The cause of the injury must be reasonably foreseeable .....

Although negligence questions involving issues of what is reasonably foreseeable are ordinarily left to the jury, there are instances when the judge may decide them as a matter of law, where no rational view of the evidence would warrant a finding of negligence.

*Glick v. Prince Italian Foods, Inc.,* 25 Mass.App.Ct. 901, 903, 514 N.E.2d 100, 102 (1987) (citations omitted). Accordingly, a number of Massachusetts cases have held that intervening criminal conduct will constitute an intervening cause.

In *Jesionek v. Massachusetts Port Authority,* 376 Mass. 101, 378 N.E.2d 995 (1978), the court remarked upon "the line

---

4. When a child engages in an adult activity, such as driving an automobile, courts will frequently treat the child as an adult and hold the child to the standard of care for an adult. *Restatement (Second) Torts* § 283A, comment c; *see, e.g., Dellwo v. Pearson,* 259 Minn. 452, 107 N.W.2d 859 (1961).

5. Significantly, in *McDonald,* a 16 year old child who was hit by a train requested a jury instruction that "the Commonwealth of Massachusetts ... places a common law duty of reasonable care ... to prevent harm to foreseeable child trespassers." *McDonald,* 399 Mass. at 28, 502 N.E.2d at 524. The court denied the instruction, holding that for such a rule to apply, the plaintiff's youth must actually have impeded the ability to comprehend the risk. *Id.* The *Restatement* indicates that courts frequently will not impose a duty beyond a certain age of a trespasser, which almost never exceeds sixteen or seventeen, and that some—although few—courts will find a duty at the ages of sixteen or seventeen. *Restatement (Second) Torts* § 339, comment c. The Supreme Judicial Court has indicated that, whether the age of a teenager, by itself, can remove a trespasser from the ambit of the statute is a question of fact, which depends upon the nature of the hazard. *Puskey v. Western Massachusetts Electric Co.,* 21 Mass. App.Ct. 972, 974, 489 N.E.2d 1025, 1027 (1986) (citations omitted).

6. Rather than seek to build a case that the decedent could not appreciate the risk *because of his age,* the plaintiff argues that she "will be able to show that *despite Chris' age,* his emotional and mental condition at that point in time was so disturbed as to go well beyond a reckless, 'knowing disregard' for the danger inherent in gaining unsupervised access to motor vehicles, indeed, it rose to the level of a true 'failure to appreciate' any risk." Plaintiff's Brief at 6 (emphasis added). Indeed the plaintiff urges this Court to consider evidence that the decedent's ability to appreciate risks was likely to *decrease* as he aged. *Id.* at 6–7. The plaintiff concludes that, in twice stealing a car from this lot, the decedent "was acting just like a *child."* *Id.* at 8 (emphasis in original). This Court disagrees.

of cases in which this court has held that negligence in leaving keys in the ignition of a parked car is not the proximate cause of injuries resulting from the operation of the car by a thief." *Id.* at 104, 378 N.E.2d at 997 (citing *Galbraith v. Levin,* 323 Mass. 255, 81 N.E.2d 560 (1948); *Ouellette v. Bethlehem–Hingham Shipyard, Inc.,* 321 Mass. 390, 73 N.E.2d 592 (1947); *Sullivan v. Griffin,* 318 Mass. 359, 61 N.E.2d 330 (1945); *Slater v. T.C. Baker Co.,* 261 Mass. 424, 158 N.E. 778 (1927)). The plaintiff is correct in arguing that this rule is an exception to the ordinary principles of causation and should not be applied unless "the specific facts justifying the exception are present." *Jesionek,* 376 Mass. at 105, 378 N.E.2d at 997. The *Jesionek* court stated the rule as follows:

> The cases which have absolved an owner of a vehicle of liability when that vehicle has been stolen constitute a narrow exception to this general rule and represent an independent *legal judgment that individuals are not bound to anticipate or guard against the actions of thieves.*

*Id.* at 105, 378 N.E.2d at 997 (emphasis added). Despite its cautionary language, *Jesionek* reaffirms the line of cases finding no causation when keys are left in a car and it is stolen.

The plaintiff refers this Court to *Smith v. Eagle Cornice & Skylight Works,* 341 Mass. 139, 167 N.E.2d 637 (1960). In that case, the court left the question of whether a trespassory action occurred, constituting an intervening cause of the injury, to a jury. *Id.* at 142, 167 N.E.2d at 639. In this case, however, plaintiff's own allegation of the decedent's criminal conduct is too bound up in the essence of what occurred to be disputed by the plaintiff.

Turning to the cases cited in *Jesionek,* this Court finds a body of law that is compelling against the plaintiff. In *Slater,* 261 Mass. 424, 158 N.E. 778, the Supreme Judicial Court sustained a directed verdict absolving the defendant of liability where someone "feloniously appropriated the automobile and drove it at a high rate of speed" before killing the plaintiff's decedent. *Id.* at 425, 158 N.E. at 778. As the

court noted, "the larceny of the automobile and its use by the thief were intervening independent acts which the defendant was not bound to guard against." *Id.* at 425, 158 N.E. at 779 (citations omitted). Such criminal appropriation is equally independent and intervening regardless of whether it was committed by a third party or by the actual plaintiff.

In *Sullivan,* 318 Mass. 359, 61 N.E.2d 330, the Supreme Judicial Court denied recovery for the administratrix of a decedent killed by a car stolen from the defendant, even where the defendant had violated a state law against leaving an unlocked automobile unattended. In holding that such a theft obliterates proximate cause, the court noted:

> The plaintiff's contentions go far toward making the defendant an insurer as to the consequences of every accident in which his automobile might become involved while operated by the original thieves or their successors in possession. This is a course upon which, even if it were open, we decline to embark.

*Id.* at 362, 61 N.E.2d at 332.

Similarly, in *Ouellette,* 321 Mass. 390, 73 N.E.2d 592, the court found a fire department not liable when a thief stole its truck "after it had been left unlocked and with the motor running in front of the fire station." *Id.* at 393, 73 N.E.2d at 594 (citations omitted). In this case, the court sustained a directed verdict, thus holding that, as a matter of law, the owner of the truck was not liable for any injury that occurred to the plaintiff while the truck was operated by a thief.

In *Galbraith,* 323 Mass. 255, 81 N.E.2d 560, the plaintiff was hit by an automobile owned by the defendant, while driven by a thief. The defendant's agent had left the vehicle unattended in a parking lot with the keys on top of the sun visor, inside of the vehicle. The court held that "the conduct of the thief was an intervening cause which the defendants were not bound to anticipate and guard against." *Id.* at 261, 81 N.E.2d at 564. The Supreme Judicial Court found no proximate cause as a matter of law. *Id.*

In light of these precedents, this Court is compelled to find no proximate cause as a matter of law. The theft of the vehicle by the decedent is the superseding cause. In this case, where there was no injury to an innocent third party, there is not even a mitigating policy concern.

■ In fact, as Conrail points out, there is a good argument that, under Massachusetts law, a party should be prevented from recovering for an injury where that party was violating a criminal law. The Supreme Judicial Court has noted that, if the violation of a criminal law by the plaintiff "contributes directly to his injury, his action is barred, irrespective of negligence." *Baggs v. Hirschfield*, 293 Mass. 1, 2, 199 N.E. 136 (1935). That court determined that this rule is distinct from the rule that a plaintiff's violation of a statute would be contributory negligence. *Id.* Thus, the rule that criminality of the plaintiff's conduct bars recovery as a matter of public policy is unaffected by the subsequent adoption of comparative negligence.

> It has long been established that one who is violating the criminal law cannot recover for an injury to which his criminality is a directly contributing cause. Such a person is precluded from recovery provided the element of criminality involved in the act and intended to be punished by the law has a direct contributory effect in producing his injury.

*Patrican v. Garvey*, 287 Mass. 62, 64, 190 N.E. 9, 10 (1934) (denying recovery to 11 year old boy injured when riding his bicycle in violation of a traffic statute). The *Patrican* decision indicates that this rule is a matter of public policy unto itself and apart from the doctrine of contributory negligence. *Id.* at 65, 190 N.E. at 11.

■ The plaintiff's count for psychological shock and depression has independent difficulties. Since the plaintiff is only suing in a representative capacity, it is axiomatic that she may not bring her own personal injury claims in this action. The count, moreover, contains nothing actionable under Massachusetts law.[7] *See MacCuish v. Volkswagenwerk A.G.*, 22 Mass.

[7] The plaintiff does not even contest this point.

App.Ct. 380, 397, 494 N.E.2d 390, 401 (1986), *aff'd*, 400 Mass. 1003, 508 N.E.2d 842 (1987) (grief, anguish and bereavement not actionable under Massachusetts wrongful death law); *Nancy P. v. D'Amato*, 401 Mass. 516, 519–20, 517 N.E.2d 824, 826 (1988) ("a parent claiming emotional distress caused by negligently inflicted injuries to her child must witness the injury or come upon the injured child promptly after the injury"); *Santana v. Registrars of Voters*, 398 Mass. 862, 867, 502 N.E.2d 132, 135 (1986) ("A person cannot recover for negligently caused emotional distress absent physical injuries.") (citation omitted).

In light of these findings, this Court hereby grants defendant Conrail's motion to dismiss.